[643 NYS2d 79]

Michelle Payette, Appellant, v Rockefeller University, Respondent.

First Department, May 30, 1996

---

### APPEARANCES OF COUNSEL

*Robert G. Harley* of counsel, New York City *(Richard Drey-fuss* on the brief; *Harley & Browne,* attorneys), for appellant.

*Dawn C. DeSimone* of counsel, New York City *(Fiedelman & Hoefling,* Jericho; and *Jacobowitz, Garfinkel & Lesman,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.,

The issue on this appeal is whether the complaint, asserting a single cause of action against Rockefeller University for the careless, unskillful and negligent design, prescription, supervision and control of a dietary regimen, is governed by the three-year Statute of Limitations applicable to negligence actions or the $2^1/_2$-year statute applicable to medical malpractice actions. The IAS Court, finding that the latter applied and that the action was necessarily barred, dismissed the complaint.

On or about June 13, 1990, plaintiff, age 27, a summer research intern at Rockefeller University and premedical student at the University of California at Davis, was asked by Rockefeller to participate as a control person in an experimental diet study. Upon admission to Rockefeller University Hospital as a "normal volunteer for HDL turnover studies", she was found to have no particular history of relevant medical illness other than having a urinary tract infection just prior to admission, for which she was taking medication.

Between June 13, 1990 and September 19, 1990, plaintiff received a series of iodine injections as part of the program. She was discharged from the hospital on September 19, 1990 after having participated in three studies: the ethanol Average American Diet, the Average American Diet without ethanol and the American Heart Association Diet Step 2 Diet (twin diet). Upon discharge, she received a four-week supply of potassium iodide, which plaintiff continued to ingest orally through October 1990.

In November 1990, plaintiff, having returned to California, began to experience digestive problems; she found it increasingly difficult to concentrate and complained of fatigue and dryness of hair and skin. She also gained weight, which, with the other symptoms, she attributed to the stress of school work. Eventually, plaintiff was diagnosed as having an enlarged thyroid and hypothyroidism.

Plaintiff commenced this action, alleging personal injury and suffering as a result of the negligent design and supervision of the diet study program, by the September 13, 1993 filing of a summons and complaint, which she served on December 9, 1993. In its answer, Rockefeller interposed the affirmative defense of the bar of the applicable Statute of Limitations. Plaintiff thereafter moved to strike the defense on the ground that the action was timely commenced within the three-year period applicable to a negligence claim (CPLR 214), which, she argued, controlled since she was complaining of the supervision and control of the research program, including the "negligent administration of chemical substances", as opposed to acts consisting of diagnosis, care or treatment, which, if not consistent with accepted standards, would constitute medical malpractice. Rockefeller cross-moved to dismiss the complaint as time barred under the $2^1/_2$-year Statute of Limitations applicable to medical malpractice actions (CPLR 214-a). The IAS Court denied the motion, granted the cross motion and dismissed the complaint, concluding that the allegations of negligence were "not claims of simple negligence" but rather acts of a type that required professional skill and judgment and as to which expert testimony would be required. Plaintiff thereafter moved to renew and reargue on the ground, *inter alia*, that the court applied an improper test in determining whether the claim sounded in negligence or medical malpractice. The motion was denied. Plaintiff appeals from both orders.

A claim sounds in medical malpractice when the gravamen of the complaint is "negligence in furnishing medical treatment to a patient." (*Bleiler v Bodnar*, 65 NY2d 65, 73.) "Conduct may be deemed malpractice, rather than negligence, when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician'." (*Scott v Uljanov*, 74 NY2d 673, 674-675, quoting *Bleiler v Bodnar, supra*, at 72.) In *Spatafora v St. John's Episopal Hosp.* (209 AD2d 608, 609), the Second Department held that when "the incompetence alleged is of a specialized medical nature, deriving from the physician-patient relationship,

and substantially related to medical diagnosis and treatment, the action it gives rise to is by definition one for medical malpractice rather than for simple negligence." (*See, Papa v Brunswick Gen. Hosp.*, 132 AD2d 601, 603; *Coursen v New York Hosp.-Cornell Med. Ctr.*, 114 AD2d 254, 256.)

None of the circumstances essential to a cause of action in malpractice, especially the existence of a physician-patient relationship, are present in the instant matter. In her complaint, plaintiff makes no claim of Rockefeller's malpractice in furnishing medical treatment. It is also clear that plaintiff did not consult Rockefeller as a health care provider. Nor did she undergo, as part of any medical treatment, the procedures complained of, i.e., the multiple injections of isotopes of iodine, which she contends were three times the amount approved by Rockefeller's Board of Directors in its protocol. The fact that medical doctors examined and evaluated plaintiff and made notations in Rockefeller's hospital chart as to plaintiff's medical reaction to the diet does not, by itself, indicate the existence of a physician-patient relationship. Furthermore, she does not sue Rockefeller in any capacity other than as the owner, operator and manager of "an institution of higher learning", a characterization which is not contrived for the purpose of pleading a negligence action but rather reflects Rockefeller's reputation as a research institution and the fact that, as such, it devised and conducted the challenged diet study program as part of its ongoing research.

While Rockefeller focuses on certain discrete aspects of the diet study program, which it characterizes as involving typically medical procedures, and emphasizes that physicians performed the acts cited, this is not the essence of plaintiff's claim. The complaint asserts a cause of action based on Rockefeller's alleged negligent creation and implementation of its diet research program. And, while the medical examinations, testing and procedures to which plaintiff was subjected during her participation in the program were conducted by physicians, as the record makes clear, plaintiff, a healthy 27-year-old woman, never sought any diagnosis or treatment of a medical condition from Rockefeller. Whatever procedures she underwent, she did so strictly as a volunteer in a diet study program, not as a patient with a medical condition.

Furthermore, while plaintiff alleged in her bill of particulars that Rockefeller's wrongdoing included acts which, to be sure, are traditionally those associated with a physician, such as injecting her with iodine, failing to warn her of the side effects,

failing to obtain an informed consent, failing to monitor her condition and supervise the diet study staff, there is no allegation that she sought or expected to receive treatment when she was recruited as a volunteer in the program. Thus, the acts complained of were neither part of any medical treatment nor, a fortiori, substantially related to such treatment.

In holding that "the gist of" plaintiff's allegations charged Rockefeller with medical malpractice, the IAS Court reasoned that certain of the acts complained of, e.g., carelessly and improperly injecting plaintiff with radioisotopes, causing injury to plaintiff's thyroid gland and failing adequately to monitor her condition, required the exercise of professional skill and judgment, which could not be established without expert testimony. It should be noted that in neither *Bleiler v Bodnar* (65 NY2d 65, *supra*) nor *Scott v Uljanov* (74 NY2d 673, *supra*) did the Court of Appeals define medical malpractice in terms of whether the acts complained of would be within the realm of a lay jury's comprehension or instead require expert testimony so that the jury could make the necessary connection between the complained-of acts and the alleged lack of professional skill and knowledge of the doctor or medical facility (*see*, *e.g.*, *McDermott v Manhattan Eye, Ear & Throat Hosp.*, 15 NY2d 20, 24). Indeed, shortly after the decision in *Bleiler*, the Second Department, in *Stanley v Lebetkin* (123 AD2d 854), held that the "critical question in determining whether an action sounds in medical malpractice or simple negligence is the nature of the duty to the plaintiff which the defendant is alleged to have breached." As the Court noted: "When the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." (*Supra,* at 854.)

Common sense would seem to dictate that the difference between a medical malpractice and negligence action could never be made to turn on whether expert testimony is required to establish liability. Not all malpractice claims require expert testimony. For instance, such testimony would hardly be required to show that leaving a scalpel in a patient does not constitute accepted medical practice. (*See*, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214-a:1, at 597.) Furthermore, a plaintiff may rely on the doctrine of res ipsa loquitur to establish medical malpractice. (*See*, *e.g.*, *Mack v Hall Hosp.*, 121 AD2d 431; *Fogal v Genesee Hosp.*, 41 AD2d 468; *Pipers v Rosenow*, 39 AD2d 240.)

The point is that if the alleged act of malpractice does not fall "within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case" (*Keane v Sloan-Kettering Inst.*, 96 AD2d 505, 506).

Another factor militating against the use of expert testimony as the determinative difference between the simple negligence claim and a medical malpractice claim is the fact that expert testimony is often required to establish liability in the ordinary negligence or products liability case. (*See, e.g., Santoro v American Airlines*, 170 AD2d 206; *see also, Bashaw v Rite Aid*, 207 AD2d 632.) Whatever the nature of the action, expert testimony is appropriate when it serves to clarify an issue that is beyond the ken of the lay juror and calls for professional or technical knowledge. (*De Long v County of Erie*, 60 NY2d 296, 307.) Thus, while, as in the instant matter, expert testimony may be necessary to establish certain elements of a cause of action, it does not follow that the action sounds in medical malpractice. Whatever expert testimony plaintiff might avail herself of would bear on Rockefeller's conduct in its capacity not as a medical provider treating a patient but as the designer and prescriber of an experimental diet study program and its implementation, control and monitoring of the healthy volunteers who participated in the program.

Since plaintiff has not alleged or relied upon the existence of a patient-physician relationship or asserted that Rockefeller's wrongful conduct constituted medical treatment or was substantially related to the same, her action does not sound in medical malpractice. Thus, her action was timely commenced under the applicable three-year Statute of Limitations.

Accordingly, the order of the Supreme Court, New York County (William J. Davis, J.), entered March 7, 1995, which denied plaintiff's motion pursuant to CPLR 3211 (b) to dismiss the second affirmative defense and granted defendant's cross motion pursuant to CPLR 3211 (a) (5) to dismiss the complaint on the ground that the action is time barred, should be reversed, on the law, without costs or disbursements, the motion granted, the cross motion denied and the matter remanded for further proceedings. The appeal from the order of the same court and Justice entered July 14, 1995, which denied plaintiff's motion for leave to renew/reargue, deemed to be one to reargue, should be dismissed as nonappealable, without costs.

MILONAS, ELLERIN, NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered March 7, 1995, reversed, on the law, without costs or disbursements,

plaintiff's motion to dismiss the second affirmative defense granted and defendant's cross motion to dismiss the complaint on the ground that the action is time barred denied, and the matter remanded for further proceedings, and the appeal from the order of the same court and Justice, entered July 14, 1995, dismissed as nonappealable, without costs.