In re **WITHAM MEMORIAL HOSPITAL**,
Appellant–(Non–Party).

**Victor A. Lalas and Nancy Lalas**,
Appellees–Plaintiffs,

v.

**Dr. Paul Honan, Dr. Alexander Gatzimos,
Dr. Barth Conard and Dr. John Olson**,
Appellees–Defendants.

No. 06A01–9712–CV–415.

Court of Appeals of Indiana.

Feb. 18, 1999.

Peter L. Obremskey, Carol Sparks Drake, Parr Richey Obremskey & Morton, Lebanon, Indiana, Attorneys for Appellants.

John S. (Jay) Mercer, John H. Lewis, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

MATTINGLY, Judge

Witham Memorial Hospital (the Hospital) appeals a trial court order requiring it to produce certain documents in response to a third-party request for production of documents. We consolidate and restate the Hospital's issues as whether the trial court erred by ordering the Hospital to produce a report prepared by an investigator hired by its counsel when that report had been kept in counsel's confidential file and a copy had not been provided to the Hospital? [1]

We reverse.

## FACTS AND PROCEDURAL HISTORY

In 1995, reports of impropriety as to the actions of some hospital employees were brought to the attention of the Hospital's Board of Trustees by some of the doctors at the Hospital. In December of 1995, a hearing took place at which the doctors' counsel made numerous allegations against the Hospital, including sexual harassment, misappropriation of hospital property, mismanagement, and improprieties in competitive bidding. In response thereto, the Hospital's attorneys hired Thad Droast, an independent investigator and former FBI agent, to investigate the allegations. Victor Lalas, the Hospital's vice-president, was suspended with pay pending the result of that investigation.

On January 22, 1996, upon the conclusion of Droast's investigation, the Hospital's attorneys issued a press release, which stated:

At this time, Mr. Droast has substantially completed his investigation. Mr. Droast stated, "I have found no credible evidence to support any misappropriation of Hospital funds or equipment, nor is there any evidence to support allegations of conversion of the Hospital equipment for personal use of Hospital employees or improper use of cumulative building funds". He further stated there was no evidence of bid rigging or kickbacks by Hospital personnel or their contractors. Given the clean bill of health from his investigation to date, the two suspended employees were asked to return to work effective January 22, 1996 and have done so.

R. at 47.

On that same date, the Hospital disseminated a memorandum to all of its employees, indicating the press release had been issued concerning the results of Droast's investigation. It stated in part: "As you can see, the investigator discovered no evidence of wrong doing on the part of ... Vic Lalas, or any other employee against whom allegations were made." *Id.* at 193.

In May of 1996, the Hospital and Lalas entered into a "Full and Final Severance Agreement...." *Id.* at 213–21. In September of 1996, Lalas filed a complaint against the doctors who had brought the alleged improprieties to the Board. That complaint alleged, among other things, that the doctors had "initiated a series of activities with the intentional inducement to breach the Plaintiff's contract with the Hospital and lead to his dismissal with said actions...." [2] *Id.* at 15.

During the course of that litigation, attorneys for one of the doctors served a Request for Production of Documents to Non–Party upon the Hospital. One of the requests was for:

---

[1]. Because we find that the report is protected from disclosure by the attorney-client privilege, we do not address the Hospital's alternative argument that the report is protected as attorney work product.

[2]. Lalas' wife, in a separate count of the Complaint, alleged "potential loss of future support and loss of consortium."

Copies of all documents or things prepared by Witham Memorial Hospital or its agents with respect to an investigation by Witham Memorial Hospital or its agents with respect to the activities of Victor A. Lalas.

*Id.* at 35–36.

The Hospital's response to this Request was:

Insofar as Witham's attorneys may have responsive documentation, these materials are protected attorney work product and subject to the attorney-client privilege. Witham, therefore, objects to the production of its attorneys' work product.

*Id.* at 233.

One of the doctors moved to compel production of the Droast report. He also requested an order that the Hospital's chief executive officer answer certain questions propounded to him during a deposition. The bulk of those questions related to the Droast report. The Hospital sought a protective order, asserting that the Droast report and the information sought in the deposition was protected by the attorney-client privilege and/or was the work product of its attorneys. Attached to the request for a protective order was an affidavit from the Hospital's chief executive officer verifying that the Hospital never had possession of the Droast report. The Hospital later filed an affidavit from its attorneys stating that the Droast report had been prepared at the request of counsel, had always been treated as confidential in counsel's files, and had never been sent to the Hospital.

After a hearing on all pending discovery motions,[3] the trial court directed the Hospital to produce the Droast report for an in-camera review. The trial court then ordered certain portions of the Droast report to be produced. This appeal ensued.

## DISCUSSION AND DECISION

■ In reviewing discovery matters, we recognize that the trial court is vested with broad discretion. Consequently, our standard of review is limited to determining whether the trial court abused its discretion.

*National Eng'g & Contracting Co. v. C & P Eng'g & Mfg. Co.,* 676 N.E.2d 372, 375 (Ind. Ct.App.1997). An abuse of discretion occurs when the trial court reaches a conclusion which is against the logic and natural inferences to be drawn from the facts of the case. *Corll v. Edward D. Jones & Co.,* 646 N.E.2d 721, 723 (Ind.Ct.App.1995).

■ We believe the trial court abused its discretion in ordering the production of the Droast report because that report is protected from disclosure by the attorney-client privilege. Indiana Trial Rule 26(B)(1) states in pertinent part:

Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject-matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. . . .

(Emphasis supplied).

■■ The attorney-client privilege is an important provision in our law for the protection of persons in need of professional legal help. *Colman v. Heidenreich,* 269 Ind. 419, 422, 381 N.E.2d 866, 868 (1978). The privilege allows both the attorney and the client to give complete and confidential information, so that both may be fully advised regarding the attorney's services to the client. *See id.* Moreover, it assures the client that these confidences will not be violated. *Id.* As long as a communication is within the scope of the privilege, "it is of no moment to the privilege's application that there is no pendency or expectation of litigation." *Id.* at 423, 381 N.E.2d at 869.

■ Just as communications made directly between an attorney and his or her client are privileged, so too are communications between attorneys and the experts or investigators they hire on behalf of a client, as well as communications between agents of the client and agents the attorney hires on behalf of a client. The attorney-client privilege attaches to communications between the

---

**3.** Lalas also filed a request for production of the        same information.

client and an agent of the attorney, as long as 1) the communication involves the subject matter about which the attorney was consulted and 2) the agent was retained by the attorney for the purpose of assisting the attorney in rendering legal advice to or conducting litigation on behalf of the client. *Brown v. State*, 448 N.E.2d 10, 14 (Ind.1983). So, in this case, the privilege attached to communications between the client Hospital and the investigator retained by the Hospital's counsel.

■ Communications between the employees or agents of the client Hospital and the attorney's investigator are also protected by the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In that case, Upjohn's general counsel was informed that a foreign subsidiary had made questionable payments to foreign government officials in order to secure government business. An internal investigation of the payments was initiated and as part of this investigation, Upjohn's attorneys sent a questionnaire to all foreign managers seeking detailed information concerning such payments, and the responses were returned to counsel. Counsel interviewed the recipients of the questionnaire and other company officers and employees. Subsequently, based on a report Upjohn voluntarily submitted disclosing the questionable payments, the Internal Revenue Service began an investigation and issued a summons demanding production of the questionnaires and the memoranda and notes of the interviews. Upjohn refused to produce the documents on the grounds that they were protected from disclosure by the attorney-client privilege.

The *Upjohn* Court held the communications by Upjohn's employees to counsel were covered by the attorney-client privilege insofar as the responses to the questionnaires and any notes reflecting responses to interview questions were concerned. *Id.* at 391, 101 S.Ct. 677. The Court noted that in the case of the individual client the provider of information and the person who acts on the lawyer's advice are one and the same. However, in the corporate context it will frequently be middle- or lower-level employees

who will have the information needed by the corporation's lawyers. Those employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties. As a result, it is only natural that these employees would have the relevant information needed by corporate counsel if he is to adequately advise the client with respect to such actual or potential difficulties. *Id.* So long as the reports generated by those experts or investigators are not disseminated to the client or others, or the attorney client privilege is not waived, those reports remain confidential and protected by the attorney-client privilege. *Id.*

■ As the privilege attaches between counsel for the Hospital and the investigator they hired, the Droast report is protected. It is well established that communications of an attorney's agent to the attorney are generally within the privilege because the attorney's agent is also the client's sub-agent and is acting as such for the client. *See* 8 John Henry Wigmore, *A Treatise on the Anglo–American System of Evidence in Trials at Common Law* § 2317 (McNaughton rev. 1940 & Supp.1991). *And see* 3 Spencer A. Gard, *Jones on Evidence* § 21:15 (6th ed. 1972) (noting the "prevailing rule" that an attorney may, "in the course of rendering professional services employ assistants ... in addition to those used in the process of communicating with the client, and that communications between the lawyer and such persons are privileged"). The attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable counsel to give sound and informed advice. *Shew v. Freedom of Info. Comm'n*, 245 Conn. 149, 714 A.2d 664, 669 (Conn.1998). *See also Bearden v. Boone*, 693 S.W.2d 25, 27 (Tex.App.1985) (investigator hired by counsel for a divorcing husband to investigate the wife was presumed to have authority to assert attorney-client privilege on behalf of husband).

As a result, we find that the Droast report and other communication between the investigator and counsel for the Hospital related to counsel's investigation of the allegations

against the Hospital are protected by the attorney-client privilege from disclosure.[4]

 The doctors and Lalas argue that the Hospital waived the attorney-client privilege by releasing information about the Droast report in the January 21, 1996 press release and in the memorandum to hospital employees. We disagree.

We note initially that the press release and memorandum did not include the report nor any excerpts from the report; thus, none of the communications asserted to be confidential were disclosed. Rather, the press release and memorandum merely summarized and commented upon the results of the investigation without revealing any of the information which supported those results. These public comments about the report did not compromise the confidentiality of the report itself, the communications between the attorneys and the investigator during the investigation, nor the analysis contained in the report. As a result, the press release and memorandum could not have had the effect of a waiver of the attorney-client privilege.

 We further note that information subject to the attorney-client privilege retains its privileged character until the client has consented to its disclosure. *Mayberry v. State,* 670 N.E.2d 1262, 1267 (Ind.1996). Nothing in the record indicates the Hospital consented to the disclosure of the Droast report. Without a clear consent, the information contained in the Droast report is privileged.[5]

## CONCLUSION

The communications between counsel for the Hospital and an investigator hired by counsel to investigate allegations against the Hospital were protected from disclosure by the attorney-client privilege and the privilege was not waived by the release of statements

summarizing the results of the investigation. The trial court abused its discretion in ordering production of the report, and its order is reversed.

KIRSCH, J., and FRIEDLANDER, J., concur.

---

4. It should be noted that our decision here today does not affect the distinction between consulting experts and those experts who are expected to testify at trial. In the present case, should the Hospital have been a party to litigation and intended to utilize some of the information contained in the Droast report and/or Droast's testimony at trial, the Hospital would necessarily have to waive its attorney-client privilege.

5. In addition, any questions asked of the Hospital's chief executive officer during the deposition requesting information concerning the Droast report or its findings will not be allowed, since they request privileged information.