Marilyn S. WELDON, Appellant–
Defendant,

v.

UNIVERSAL REAGENTS, INC.,
Appellee–Plaintiff.

No. 49A04–9808–CV–400.

Court of Appeals of Indiana.

May 7, 1999.

Opinion Denying Motion to Vacate
or Retract Opinion from Publication
July 19, 1999.

Cynthia S. Rose, York, Schrager, Baxter, James & Rose, Indianapolis, Indiana, Attorney for Appellant.

Matthew A. Griffith, Thrasher Griffith & Voelkel, P.C., Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE[1]

Defendant/Counter–Claimant–Appellant Marilyn S. Weldon ("Weldon") appeals from the trial court's order granting partial dismissal for lack of subject matter jurisdiction in favor of Plaintiff/Counter–Defendant–Appellee Universal Reagents, Inc., ("URI").

We reverse and remand to the trial court.

### ISSUES

Weldon raises two issues for our review which we restate as:

I. Whether a party is estopped from raising the issue of lack of subject matter jurisdiction nineteen months after a compulsory counterclaim is filed against the party.

II. Whether a person who donates blood as part of a red blood cell donor program is a health care provider's patient receiving medical treatment for purposes of Indiana's Medical Malpractice Act, subjecting any claims that person might have against the program to the procedures under the Medical Malpractice Act.

### FACTS AND PROCEDURAL HISTORY

The following are the facts as alleged in URI's verified complaint and Weldon's counterclaim. In August of 1995, Weldon saw an advertisement placed by URI asking for women to participate in URI's Red Blood Cell Donor Program. URI is an Indiana corporation engaged in the business of locating, procuring, utilizing, developing and selling plasmas which are unique and valuable. URI is licensed federally to immunize plasma donors and potential donors with human red blood cell antigens in order to increase the level of Rho(D) antibody in the donor's blood. The Rho(D) antibody is used to produce a medical product called Rh Immune Globulin, also known as RhoGam. In exchange for plasma donations the advertisement indicated participants would receive monetary compensation. The product made from the plas-

1. Weldon has requested oral argument in this matter. We do not believe that oral argument is necessary. Therefore, the request for oral argument is denied.

ma donations would be used to help Rh negative pregnant women with Rh positive babies. Weldon responded to the advertisement and participated in the program.

Weldon began participating in the program in August of 1995 and received donor fees and expense payment for participating in the program. URI selected Weldon for the program because her body was able to produce Rho(D) antibodies. Weldon signed an Agreement as to Exclusivity document, an Informed Consent for Immunization with Human Red Blood Cell Antigens for Anti–RHO–(D) document, and a Plasmapheresis Informed Consent document.

URI immunized Weldon with certain antigens. The antigens then caused Weldon's body to produce the desired antibodies. URI then extracted Weldon's plasma so the antibodies could be isolated and used to produce RhoGam. Weldon became ill when she was immunized with the antigens, and developed a large hematoma at the site of the injections and withdrawals. Weldon confronted Donald Foster, Vice President of URI, with her request to withdraw from the program. Weldon alleges that Foster advised her that she could withdraw from the program only after paying $1,000 to URI. Weldon could not pay that amount and decided to file a claim *pro se* in the Marion County Small Claims Court.

Weldon last participated in the program in November of 1995. In December of 1995 Weldon was successful in her small claims action to be released from the program, won a default judgment against URI, and was awarded $1,000 in damages. Weldon alleges that URI was served notice of the complaint and hearing, but did not attend. Weldon then entered into an agreement with Saturn Biomedical and Donald Barnhart for participation in a different Red Blood Cell Program.

URI was successful in its attempt to set aside the default judgment entered in favor

of Weldon. URI provided Weldon with notice of its intent to sue her for $24,000, if she did not dismiss her complaint. Weldon subsequently dismissed her small claims complaint against URI. URI filed its complaint against Weldon and Saturn Biomedical in August 1996.

URI's complaint alleged that Weldon had breached her contract with URI by entering into an agreement with Saturn Biomedical. URI also claimed that Weldon's small claims action constituted malicious prosecution and an abuse of process.[2] Weldon filed a counterclaim against URI alleging that URI had committed a battery upon her body for failing to inform her that the antibodies produced as a result of the antigen injections would change her blood permanently. She also alleged that URI caused her emotional distress by refusing to allow her to leave the program and by threatening to sue her.

The matter was set for trial in July of 1998. However, on March 31, 1998, URI filed a Motion for Summary Judgment based upon a lack of subject matter jurisdiction. URI claimed that it was a qualified health care provider and that Weldon's counterclaim should have been reviewed by a medical review panel prior to the trial court assuming jurisdiction of the counterclaim.

The trial court issued an order[3] concluding that URI was a health care provider, that Weldon was a patient as defined by the Indiana Medical Malpractice Act, and that the trial court lacked subject matter jurisdiction to hear Weldon's claims. Weldon appeals from the entry of that order.

## DISCUSSION AND DECISION

### I. SUBJECT MATTER JURISDICTION

 Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings then before the court belong. *Sons v. City of Crown Point,* 691 N.E.2d 1237, 1239 (Ind.Ct.

**2.** URI also asserted claims against Saturn Biomedical. However, those claims are not the subject of this appeal.

**3.** The trial court properly treated URI's motion for summary judgment due to lack of subject

matter jurisdiction as a motion to dismiss pursuant to Ind. Trial Rule 12(b)(1). *See Mannon v. Howmet Transport Service, Inc.,* 645 N.E.2d 1135, 1136 (Ind.Ct.App.1995).

App.1998). Subject matter jurisdiction cannot be waived or conferred by agreement. *Id.* Subject-matter jurisdiction may be raised by the parties or the court at any time, including on appeal. *Campbell v. Eckman/Freeman & Associates,* 670 N.E.2d 925, 929 (Ind.Ct.App.1996), *trans. denied.*

■ Weldon argues that URI should be estopped from asserting the issue of lack of subject matter jurisdiction because URI did not contest Weldon's counterclaim on that basis until nineteen months after the counterclaim was filed. Weldon claims that this behavior misled her and caused her to rely to her detriment upon the assumption that subject matter jurisdiction was not an issue.[4] URI asserted that the trial court lacked subject matter jurisdiction because the counterclaim involved issues of malpractice which should be governed by the procedures of the Indiana Medical Malpractice Act.[5]

We believe that Weldon's estoppel argument is analogous to the waiver and agreement arguments regarding subject matter jurisdiction. If a party is not precluded from raising the issue of subject matter jurisdiction later after having agreed erroneously with the opposing party that subject matter jurisdiction exists, then a defendant should not be "estopped" from raising the issue later.

In *Carpenter v. State,* 266 Ind. 98, 103, 360 N.E.2d 839, 842 (1977), a case where the parties agreed to a change of venue to the Clark Superior Court, which was a court lacking jurisdiction in criminal matters, the supreme court held that appellant could not be estopped from raising lack of jurisdiction over the subject matter even if appellant or his counsel were guilty of fraud or bad faith. The court held that the reviewing court was required to determine the issue of subject matter jurisdiction *sua sponte* if the parties themselves did not raise the issue. *Id.*

We hold that URI could not be estopped from raising the issue of lack of subject

matter jurisdiction. Indiana courts consistently have held that the issue of subject matter jurisdiction can be raised as late as on direct appeal.

## II. INDIANA MEDICAL MALPRACTICE ACT

■ Weldon contends that the trial court committed reversible error by finding that it lacked subject matter jurisdiction because URI was a health care provider, that Weldon was a patient for purposes of the Indiana Medical Malpractice Act ("the Act"), and that the Act governed some of Weldon's counterclaims against URI.

■ We have held that in reviewing a T.R. 12(B)(1) motion to dismiss based upon a lack of subject matter jurisdiction, a trial court should examine the complaint, the motion, any affidavits and any other evidence to determine its authority to adjudicate the action. *M.V. v. Charter Terre Haute Behavioral Health System, Inc.,* 706 N.E.2d 1083, 1085 (Ind.Ct.App.1999). If the trial court finds the case is one of medical malpractice as defined by the Act, then it lacks subject matter jurisdiction unless the plaintiff has filed a proposed complaint with the Department of Insurance and met other conditions of the Act. *Id.;* Ind.Code § 27–12–1–1 *et seq.*

■ Rules of statutory construction require us to construe strictly those statutes which are in derogation of common law against limitations on a claimant's right to bring suit. *Collier v. Prater,* 544 N.E.2d 497, 498 (Ind.1989). Moreover, when the legislature enacts a statute in derogation of common law, we presume that the legislature is aware of the common law, and does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *State Farm Fire & Cas. Co. v. Structo Div., King Seeley Thermos Co.,* 540 N.E.2d 597, 598 (Ind.1989). Statutory procedures for bringing a medical mal-

---

4. Weldon had not filed a proposed complaint with the Indiana Department of Insurance. By the time the issue of subject matter jurisdiction had been raised the statute of limitations had expired for filing a proposed complaint pursuant to the Indiana Medical Malpractice Act.

5. The Indiana Medical Malpractice Act is now codified at Ind.Code § 34–18–1–1 *et seq.* However, the former statutory provisions apply to the facts of the case at bar. Those provisions are located at Ind.Code § 27–12–1–1 *et seq.*

practice action are in derogation of common law, and as such, they are to be strictly construed against limiting a claimant's right to bring suit. *Comer v. Gohil,* 664 N.E.2d 389, 391 (Ind.Ct.App.1996).

'Malpractice' is defined by the Act as a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider to a patient. Ind.Code § 27–12–2–18. The Act defines the term 'tort' as a legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another. Ind.Code § 27–12–2–28. 'Health care' is an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. Ind.Code § 27–12–2–13. A 'patient' is defined, for purposes of the Act, as an individual who receives or should have received health care from a health care provider, under a contract, express or implied. Ind.Code § 27–12–2–22. Health care providers include many entities including blood banks. Ind.Code § 27–12–2–14(3).

URI successfully argued below that it was a blood bank and, therefore, was a health care provider. URI also succeeded in its argument that Weldon was a patient. URI then argued that even though Weldon's counterclaim alleged the commission of a battery upon her by URI, that the substance of her complaint was an allegation of negligence in the provision of health care to her, which was an allegation of malpractice.

URI places great emphasis in language found in *Doe by Roe v. Madison Center Hospital,* 652 N.E.2d 101, 104 (Ind.Ct.App. 1995), and *Boruff v. Jesseph,* 576 N.E.2d 1297, 1298 (Ind.Ct.App.1991), quoting *Collins v. Thakkar,* 552 N.E.2d 507, 510 (Ind.Ct.App. 1990), to support the argument that the allegations in the complaint come within the purview of the Act because URI's conduct at issue involved the "provider's exercise of professional expertise, skill or judgment."

In *Collins,* the majority stated as follows about the Act:

The text of the Act itself thus leads one to conclude that the General Assembly intended to exclude from the legislation's purview conduct of a provider unrelated to the promotion of a patient's health *or the provider's exercise of professional expertise, skill or judgment.*

(emphasis added) 552 N.E.2d at 510. We note that the above comments about what constitutes acts covered by the statute are not supported by case law or statutory authority. Therefore, we find unpersuasive URI's arguments along those lines and concern ourselves with the issue of whether the conduct alleged involved the provision of health care related to the promotion of a patient's health.

URI claims that *Boruff* supports its position that Weldon's counterclaims are really informed consent claims which are negligence claims falling within the provisions of the Act. *Boruff* was a case involving a plaintiff who sought the services of a doctor to perform a surgery on her. The plaintiff specifically requested that Dr. Jesseph, and not his partner, perform the surgery on her. However, when the time came for the plaintiff's surgery, Dr. Jesseph was busy and his partner performed the surgery. We held that the plaintiff's allegations of lack of informed consent regarding the surgical assignments and the conduct relating to the performance of the surgery were actions falling within the coverage of the Act. *Boruff,* 576 N.E.2d at 1298. We held that her allegation of battery was really one of informed consent which relates to a physician's duty to "make reasonable disclosure of material facts relevant to the patient's decisions about treatment .... i.e., negligence, not battery." *Id.* at 1299.

*Boruff* is distinguishable from the case at bar. Weldon did not have a patient-physician relationship with URI. She did not seek medical treatment, but instead, participated in URI's program.

Weldon contends that there was never a patient-physician relationship between her and URI, and that she did not receive health care from URI. Weldon argues that she did not approach URI about health care or treatment for any illness.

Assuming, *arguendo*, that URI is a blood bank and, therefore, a health care provider, for purposes of the Act, that fact alone is not enough to bring Weldon's counterclaim within the purview of the Act. We find persuasive the opinion of the Florida District Court of Appeal in *Durden v. American Hospital Supply Corporation*, 375 So.2d 1096 (Fla. Dist.Ct.App.1979).

In that case a blood donor was notified by the blood bank that the donor's blood contained hepatitis antigens. The donor contracted infectious hepatitis and prosecuted a negligence action against the blood bank alleging that the blood bank had used a dirty needle, failed to use a clean or sterilized needle, and had failed to properly inspect the needle for cleanliness prior to its use. The blood bank successfully argued at the trial court level that the donor's complaint was barred by the statute of limitations applicable to medical malpractice actions. Blood banks specifically were designated as health care providers in the Florida Medical Malpractice Act.

The Florida District Court of Appeal reversed the trial court and held that in order for a health care provider to succeed in arguing that a cause of action falls within the statute of limitations for medical malpractice, the health care provider needed to present something more than the mere fact that the defendant was one of the entities described as a health care provider by statute. *Id.* at 1099. The claim for damages must arise as a result of medical, dental or surgical diagnosis, treatment or care on the part of the health care provider. *Id.* Further, the relationship contemplated by the medical malpractice act was that of doctor- or dentist-patient or hospital-patient. *Id.* The court described the relationship in the case before it as one of vendor-vendee. *See Id.*

Even more compelling to us is the opinion of the New York Supreme Court, Appellate Division, in *Payette v. Rockefeller University*, 220 A.D.2d 69, 643 N.Y.S.2d 79 (N.Y.App. Div.1996). In *Payette*, a summer research intern at Rockefeller University was asked to participate as a control person in an experimental diet research study. The intern had no health problems other than a urinary

tract infection which was being treated at the time she began to participate in the research study. The intern was given injections of iodine as part of the program. After completion of the program, the intern began to experience digestive problems, among other things, and eventually was diagnosed as having an enlarged thyroid and hypothyroidism.

The intern timely brought a negligence action against Rockefeller University for the careless, unskillful and negligent design, prescription, supervision and control of the diet study program. Rockefeller University successfully argued that the action was barred by the shorter statute of limitations applicable to medical malpractice actions.

The New York Supreme Court, Appellate Division, held that a claim sounds in medical malpractice when the essence of the complaint is negligence in furnishing medical treatment to a patient. *Payette*, 643 N.Y.S.2d at 81. The court held that none of the circumstances necessary for a cause of action in medical malpractice "especially the existence of a physician-patient relationship" were present in that cause of action. *See Id.* The court found convincing the fact that the intern did not consult the program as a health care provider. The fact that medical doctors examined her, conducted evaluations of her, and made notations of her medical reaction to the diet did not establish a physician-patient relationship.

The court reasoned that the procedures the intern underwent, were done so as a program volunteer and not as a patient with a medical condition. Even though the acts of which she complained, injections with iodine, failure to warn of side effects, failing to obtain informed consent, and failing to monitor her condition, are acts traditionally associated with a physician, the intern did not allege that she sought or expected to receive health care from Rockefeller University when she agreed to participate as a volunteer in the program.

In the case at bar, Weldon responded to an advertisement seeking participants in a red blood cell donor program. There were no facts before the trial court that Weldon suffered from any medical condition or that she

went to URI in search of medical treatment or care. Moreover, the process of injecting antigens into Weldon's body inducing her body to produce antibodies to be used to manufacture RhoGam for Rh negative pregnant women was not a procedure to benefit Weldon, rather, it was for the benefit of those Rh negative pregnant women. We conclude that Weldon is not a patient for purposes of the Act, and that the trial court erred when it so found. A physician-patient relationship is necessary to bring Weldon's claims under the procedures of the Act. *See M.V.*, 706 N.E.2d at 1087, (suit for false imprisonment falls outside scope of the Act once physician-patient relationship terminates).

## CONCLUSION

URI is not estopped from asserting the lack of subject matter jurisdiction because that issue may be raised as late as on direct appeal. The trial court erred in finding that Weldon's counterclaims fell within the coverage of the Indiana Medical Malpractice Act. There was no patient-physician relationship between Weldon and URI.

Judgment reversed and remanded to the trial court.

NAJAM, J., and BAILEY, J., concur.

## *OPINION DENYING APPELLEE'S MOTION TO VACATE OPINION OR TO RETRACT OPINION FROM PUBLICATION*

RATLIFF, Senior Judge

On May 9, 1999, this Court issued its opinion in this cause which opinion was designated "For Publication." Thereafter, on May 26, 1999, Appellee Universal Reagents, Inc., filed its Motion to Vacate Opinion or in the alternative Motion to Retract Opinion for Publication, asserting that the parties had settled the case on March 10, 1999, and a release had been executed, but that the Appellant had failed to file a Motion to Dismiss the appeal or to inform this court of such settlement. This Court now denies Appellee's said motion for each of the following reasons:

1. Although the parties may have settled the case as between themselves on March 10, 1999, they failed to notify this Court of that fact and did not move to dismiss the appeal.

2. On May 9, 1999, the date our opinion was handed down, according to the record in this case, the appeal was still pending and was a live and viable appeal.

3. The cases of *Mortell v. Mutual Security Life Insurance Company*, 678 N.E.2d 797 (Ind.1997) and *Meyer v. Biedron*, 667 N.E.2d 752 (Ind.1996), relied upon by Appellee in its said Motion to Vacate are clearly distinguishable. In each of those cases, our supreme court had granted transfer thus vacating the opinion of this court, but before the supreme court handed down its opinion on transfer, the parties settled the case. In *Mortell*, a notice of settlement and stipulation for dismissal of appeal was filed. In *Meyer*, Biedron filed a notice of settlement but requested the court to decide the appeal, but Meyer moved for dismissal of the appeal. In both cases, the supreme court dismissed the appeal. It is significant, however, that in both cases, the notices of settlement and motions to dismiss were filed *prior* to the court's issuance of an opinion. In addition, although it declined to do so, the supreme court in *Meyer* noted that it could continue its jurisdiction and decide the case on its merits.

4. Here, this court issued its opinion before being informed of the settlement. Under the circumstances, neither *Mortell* nor *Meyer* support Appellee's motion.

5. Further, this court's opinion, while not affecting the paries, decides an important issue of first impression in this jurisdiction.

6. For each of the foregoing reasons, our opinion stands as issued and shall be published.

Appellee's motion is denied in its entirety.

NAJAM, J., and BAILEY, J., concur.