**Janet PETERS, Appellant–Plaintiff,**

v.

**CUMMINS MENTAL HEALTH, INC., Appellee–Defendant.**

**No. 32A01–0209–CV–356.**

Court of Appeals of Indiana.

June 25, 2003.

Michelle E. Smith, Reed & Smith, Indianapolis, IN, Attorney for Appellant.

Lara Engelking, McMains Foster & Morse, P.C., Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Janet Peters (Peters) appeals the grant of summary judgment in favor of Cummins Mental Health, Inc. (Cummins) on Peters' negligence and intentional infliction of emotional distress claims.[1] We reverse.

### Issue

Peters presents two issues for review, which we consolidate and restate as: whether Cummins was erroneously granted summary judgment upon the trial court's determination that it lacked subject matter jurisdiction because Peters' claims were within the purview of the Indiana Medical Malpractice Act (the Act) but her complaint was not submitted to a medical review panel.

### Facts and Procedural History

On March 21, 2000, Cummins compiled a Psychological Assessment of Peters' twelve-year-old son J.M. The "Background Information" section included the following language: "A review of his records reflects that [J.M.'s] mother was declared an unfit mother and he was removed from her custody." (App.32.) The entry was apparently derived from a statement within the "Background Information" section of a Boone–Clinton–North West Hendricks Joint Services Program for Exceptional Children Psycho-educational Evaluation compiled in January 1999, as follows: "His mother was deemed to be an unfit parent." (App.25.) Donald Maw (Maw), J.M.'s custodial parent, was the initial source of the background information. During March 2000, Hendricks County social worker Trish Olmstead supplied Peters with a copy of Cummins' Psychological Evaluation.

On February 13, 2002, Peters filed suit against Maw and Cummins.[2] As to Cummins, Peters alleged that Cummins negligently failed to conduct a proper investigation before including within its report information of her alleged unfitness as a parent. She further alleged that the inclusion of a "false and defamatory statement" caused her severe emotional distress. (App.7.)

On April 15, 2002, Cummins moved for summary judgment, claiming that the trial court lacked subject matter jurisdiction over Peters' case, because her complaint had not been submitted to a medical review panel. Cummins presented the affidavit of Don Brown, Manager of the Medical Malpractice Division for the Indiana Department of Insurance, who verified that, on March 21, 2000, Cummins was a qualified health care provider pursuant to the requirements of the Act.[3]

A summary judgment hearing was held on July 9, 2002. On July 16, 2002, the trial

---

1. In addition to the Negligence Claim of Count II, Peters' Complaint also included Count I, entitled "Defamation/Libel/Slander." (App.4.) The allegations therein concerned Cummins' co-defendant, Donald Maw. In Count III, entitled "Wrongful Infliction of Emotional Distress," Peters alleged that Cummins and Maw engaged in conduct that was either intentional, negligent or reckless.

2. Maw is not an active party to this appeal.

3. Indiana Code Section 34–18–2–24.5 provides that a "qualified" health care provider is a health care provider that has complied with the procedures set forth in Indiana Code Section 34–18–3 (including filing proof of financial responsibility and payment of a yearly surcharge).

court, finding no just cause for delay, directed the entry of final judgment as to Cummins, granted summary judgment to Cummins on all claims, and purportedly "dismissed [Cummins] with prejudice." (App.83.) Peters now appeals.

### Discussion and Decision

#### A. Summary Judgment Standard of Review

The Indiana Supreme Court, in *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905 (Ind.2001), restated the well-established standard of review for summary judgment appeals:

> An appellate court faces the same issues that were before the trial court and follows the same process. *See Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1231 (Ind.1994) (citing *Greathouse v. Armstrong,* 616 N.E.2d 364, 367 (Ind. 1993)). The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *See Greathouse,* 616 N.E.2d at 365 (citing *Dept. of Revenue v. Caylor–Nickel Clinic,* 587 N.E.2d 1311, 1313 (Ind.1992)). When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having its day in court. *Id.; Estate of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.,* 713 N.E.2d 275, 277 (Ind.1999).

> Summary judgment is appropriate only if the pleadings and evidence sanctioned by the trial court show that "there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law." Ind. Trial Rule 56(C); *see also Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84

(Ind.1998). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *See* T.R. 56(C); *see also Butler v. City of Peru,* 733 N.E.2d 912, 915 (Ind.2000); *Stapinski v. Walsh Const. Co.,* 272 Ind. 6, 395 N.E.2d 1251, 1253 (1979). Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Stapinski v. Walsh Const. Co.,* 395 N.E.2d at 1253. If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *See Hall Bros. Const. Co., Inc. v. Mercantile Nat'l Bank of Indiana,* 642 N.E.2d 285, 289 (Ind.Ct.App.1994) ("If a jury could come to different conclusions from the undisputed facts, then summary judgment is inappropriate."); *see also Bochnowski v. Peoples Fed. Sav. & Loan Ass'n,* 571 N.E.2d 282, 285 (Ind.1991); *Woodward Ins. v. White,* 437 N.E.2d 59, 62 (Ind.1982) ("Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome.").

*Id.* at 908–09. We may affirm a grant of summary judgment on any theory supported by the designated materials. *Interstate Cold Storage, Inc. v. General Motors Corp.,* 720 N.E.2d 727, 730 (Ind.Ct.App. 1999).

#### B. Analysis

 Cummins asserted that the trial court lacked subject matter jurisdiction over the case because Peters' complaint was not submitted to a medical review panel for review of the complaint and rendition of an opinion, as required by Indiana Code Section 34–18–8–4 for malpractice claims against a health care provider.[4]

---

4. Subject matter jurisdiction is the power to hear and determine cases of the general class

to which the proceedings then before the court belong. *Weldon v. Universal Reagents,*

Peters responded that the Act, Indiana Code Section 34–18–1–1, et seq., is inapplicable to her claims because she was not a patient at Cummins and her claims sound in ordinary negligence rather than negligent provision of healthcare services.

■■■ Whether or not a claimant is a "patient" is a question of law for the court and is not reserved for the medical review panel. *Dixon v. Siwy,* 661 N.E.2d 600, 607 (Ind.Ct.App.1996). Too, whether the case is one of medical malpractice as defined by the Act is a question for the court. *Weldon,* 714 N.E.2d at 1107. Statutory procedures for bringing a medical malpractice action are in derogation of the common law and so are to be strictly construed against limiting a claimant's right to bring suit. *Id.* at 1107–08.

■■ The Medical Malpractice Act is applicable to " 'a patient or the representative of a patient who has a claim for bodily injury or death on account of malpractice.' " *Thomas v. Deitsch,* 743 N.E.2d 1218, 1220 (Ind.Ct.App.2001) (quoting Indiana Code Section 34–18–8–1). Pursuant to Indiana Code Section 34–18–2–18, "malpractice" is a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient.

"Patient" is defined in Indiana Code Section 34–18–2–22 as "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider."

■■ Peters has made no claim for bodily injury or death on account of malpractice, so as to bring her claims within the purview of the Act. *Goleski v. Fritz,* 768 N.E.2d 889, 891 (Ind.2002). The Act is not all-inclusive as to claims against medical providers, and a claim against a medical provider sounding in general negligence or premises liability rather than medical malpractice is outside the Act. *Methodist Hosp. of Ind., Inc. v. Ray,* 558 N.E.2d 829 (Ind.1990). *See Murphy v. Mortell,* 684 N.E.2d 1185, 1187 (Ind.Ct. App.1997) (claim of sexual battery during hospitalization outside the Act); *Doe by Roe v. Madison Ctr. Hosp.,* 652 N.E.2d 101, 103 (Ind.Ct.App.1995) (claim of sexual assault causing patient to contract chlamydia outside the Act); *Winona Mem'l Found. of Indianapolis v. Lomax,* 465 N.E.2d 731 (Ind.Ct.App.1984) (complaint for negligence arising from fall of patient on hospital premises stated a claim for premises liability not within scope of the Act).

■■■ Moreover, a physician-patient relationship is necessary to bring claims under the procedures of the Act. *Weldon,* 714 N.E.2d 1104, 1110 (Ind.Ct.App.1999). In *Weldon,* this Court concluded that a participant in a red blood cell donor program was not a patient for purposes of the Act, observing that the procedure performed on her body (injection of antigens to produce antibodies for manufacture of RhoGam for pregnant women) was not performed for the participant's benefit. *Id.* Likewise, Cummins' services were not rendered for Peters' benefit.

■■■ Finally, we are not persuaded by Cummins' argument that Peters is a "patient" under the Act because her claim is a "derivative" claim pursuant to Indiana

*Inc.,* 714 N.E.2d 1104, 1106 (Ind.Ct.App. 1999). Subject matter jurisdiction cannot be waived or conferred by agreement. *Id.* at

1107. Lack of subject matter jurisdiction may be raised by the parties or the court at any time, including on appeal. *Id.*

Code Section 34–18–2–22, which provides in pertinent part: "Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims." In *Indiana Patient's Compensation Fund v. Wolfe,* 735 N.E.2d 1187, 1192 (Ind.Ct.App.2000), this Court determined that the statutory definition of "patient" included only "a person who receives or should have received health care." Too, "any derivative claim that might arise from the malpractice committed on the patient [such as parental loss of child's services] is included within that patient's claim." *Id.* Peters is not seeking to redress an alleged injury to her child or the death of her child, who received or should have received mental health care. Rather, the thrust of her complaint is that she personally suffered emotional distress as a result of being labeled an "unfit" mother. As such, her complaint is not derived from the patient nor brought for the benefit of the patient.

Peters' claims for negligence and for intentional infliction of emotional distress lie outside the purview of the Act. Accordingly, the trial court erred in determining that it lacked subject matter jurisdiction because the complaint had not been submitted to a medical review panel. Summary judgment was erroneously granted.

Reversed.

BROOK, C.J., and NAJAM, J., concur.