**Todd Parrish LOVETT, Plaintiff,**

v.

**David BODDY and Pat Travis, Defendants.**

No. C90–0270P(H).

United States District Court,
W.D. Kentucky,
at Paducah.

Jan. 26, 1993.

Todd Parrish Lovett, pro se.

Ronald G. Sheffer, Sheffer, Hoffman, Thomason & Morton, Henderson, KY, for Pat Travis.

Richard C. Roberts, Whitlow, Roberts, Houston & Russell, Paducah, KY, for David Boddy.

## MEMORANDUM OPINION

HEYBURN, District Judge.

All three parties request summary judgment in this Section 1983 lawsuit which contends that Defendants illegally extracted blood and urine samples from Plaintiff following an automobile accident. Plaintiff also seeks to amend his Complaint by adding two more parties who allegedly participated in the violation of his constitutional rights.

The outlines of the event which gave rise to this litigation are undisputed. Plaintiff, driving a dark Firebird, led Defendant Boddy, a member of the Benton, Kentucky police force, and another squad car on a high speed automobile chase late in the evening of February 8, 1990. Boddy pursued Plaintiff's Firebird, as it raced through several stop signs, before he eventually lost sight of the car and broke off the chase. Within minutes, though, Boddy received a report that an automobile accident had just occurred at a location near the scene of the chase. When Boddy arrived, he found the dark Firebird lying upside down, and he saw two injured persons on the roadway beside the car. One of the victims was Plaintiff. Boddy discovered several bottles of alcohol when he looked inside the Firebird.

Paramedics on the scene fitted Lovett with a cervical collar, braced his back with a spine board, and rushed him to Marshall County Hospital for emergency treatment. Boddy followed them, and placed Lovett under arrest while at the hospital. The emergency room team, which included Defendant Travis provided Plaintiff treatment which stabilized his condition. In the process blood and urine samples were taken from Plaintiff. Hospital personnel subjected these fluids to necessary medical testing, analyzing at least twenty components of Plaintiff's blood and another fifteen components of his urine. (Def. Boddy's compliance with Pretrial Order, Ex. 1, pp. 6–9.) The hospital then transferred the

blood and urine which remained to Boddy. A police toxicology analysis of Lovett's blood and urine ultimately revealed the presence of alcohol in his system at the time of the accident. This analysis was admitted as evidence when Lovett was prosecuted on the charge of driving under the influence. That trial resulted in Plaintiff's conviction.

## I.

Plaintiff contends that Defendants violated the Constitution's ban against illegal search and seizure, as well as its prohibition of cruel and unusual punishment, by extracting his blood and urine, and he demands summary judgment on his claim. Defendants request dismissal of the Complaint by the same procedural device.

■ This Court must grant a motion for summary judgment if it finds that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "material fact" is one that "might affect the outcome of a suit under the governing law"; a "genuine issue" exists "if the evidence is such that a reasonable jury could return ... a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of showing "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the movant meets that burden, the opponent must "set forth specific facts," by affidavit or otherwise, which demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present some sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The Court may not determine credibility, weigh evidence, or select among conflicting inferences: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Plaintiff seeks redress for his injuries under 42 U.S.C. § 1983. He must establish two fundamental contentions before he may recover under that statute: first, that he has been deprived of a right secured by the Constitution; and second, that the alleged wrongdoers deprived him of this right while acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978). Plaintiff has presented sufficient evidence to satisfy Section 1983's "color of law" prerequisite: Defendants Boddy and Travis both appear to have been public employees acting in their official capacities at the time of Plaintiff's hospitalization. *West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). The propriety of summary judgment therefore will turn on whether the law and facts support Plaintiff's belief that Defendants violated his rights.

## II.

Plaintiff first insists that the withdrawal of blood and urine by medical professionals, which he contends took place without his consent and at the request of the police, breached his right under the Fourth Amendment to be free from unreasonable searches.

A "search" occurs when the government infringes upon "an expectation of privacy that society is prepared to consider reasonable." *Lovvorn v. City of Chattanooga*, 846 F.2d 1539, 1542 (6th Cir.1988). There can be little doubt that "intrusions beyond the body's surface" to collect blood or urine constitute "searches" subject to the limitations imposed by the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966) (extraction of blood held to be a "search"); *see also Lovvorn*, 846 F.2d at 1542 (mandatory urinalysis held by Sixth Circuit to be a "search").

The Fourth Amendment does not condemn all searches, but only those which are found to be "unreasonable." *Lovvorn*, 846 F.2d at 1543. Determining the reasonableness of a search requires courts to balance the "nature and quality of the intrusion ... against the importance of the government interests alleged to justify the intrusion." *Id.* The facts and law surrounding the two tests performed on Plaintiff—a routine blood test and a routine, though more painful and embarrassing, catheterization—present distinctly different Fourth Amendment considerations, and will be analyzed separately.

### A.

Defendant Travis does not dispute Plaintiff's contention that she withdrew Plaintiff's blood in the emergency room. (Aff. of Pat Travis, Def. Travis's Resp. to Mot. for Summ.J., App.) The dispute within the facts concerns whether Boddy ordered the blood test[1] or whether Dr. Nell ordered the test for medical reasons.[2] The Court need not resolve this factual dispute in these circumstances.

■ Even assuming it to be true that Boddy, rather than Dr. Nell, requested the test, the law as applied to these circumstances forecloses the possibility of a judgment in Plaintiff's favor. The Supreme Court has long held that police may require citizens to submit to a blood test provided the circumstances justify that request and the medical procedure employed is a reasonable one. *Schmerber*, 384 U.S. at 768, 86 S.Ct. at 1834. The Court in *Schmerber* held that a demand for blood withdrawal is justified at the outset if the police possess probable cause to believe that the subject has committed a crime. *Id.* at 768–70, 86 S.Ct. at 1834–35. There must furthermore exist "a clear indication that ... evidence will be found" through the performance of the medical procedure. *Id.* at 770, 86 S.Ct. at 1835. The extraction may proceed without a warrant if the officer reasonably believes that the desired evidence will vanish unless it is secured immediately. *Id.* This consideration is particularly compelling with respect to blood alcohol content, which disappears quickly from the body. *Id.* at 770–71, 86 S.Ct. at 1836. And lastly, a blood test undertaken by medical personnel in a medical environment will ordinarily be deemed to have been performed in a reasonable manner. *Id.* at 771–72, 86 S.Ct. at 1836.

Defendant Boddy discovered Plaintiff lying injured on the pavement near an overturned car that Boddy had pursued only minutes earlier. Boddy possessed information that Plaintiff had been driving the automobile, and Boddy saw several bottles of alcohol inside the passenger compartment. There can be little question that Boddy had probable cause to believe that Plaintiff had been driving while intoxicated. The blood test performed on Plaintiff was "a highly effective means for determining the degree to which a person is under the influence of alcohol." *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836. The administration of the test without a prior warrant was reasonable in light of the quickly-perishing nature of blood alcohol content. The evidence of record suggests

---

1. Boddy allegedly asked Plaintiff to submit to a blood test. (Dep. of Todd Lovett at 8.) Boddy has admitted that he was present in the emergency room when Plaintiff's blood was drawn. (Def. Boddy's Mot. for Summ. J., App. at 8–9.) Further, both Boddy and Travis signed a document, entitled "Blood Alcohol Specimen Collection Consent Form." This document declares that "Upon the official request of the above named police officer [Boddy] ... I [Travis] collected a specimen of blood from the named specimen donor [Lovett]...." (Pl.'s Mot. for Summ. J., Ex. A.)

2. Doctor Nell, has affirmatively declared that he alone ordered Plaintiff's blood test. (Dep. of Dr. Nell, conducted by counsel for Boddy, at 5.) The medical circumstances existing then give great credence to this assertion. Doctor Nell was confronted by a victim of multiple trauma. (Dep. of Dr. Nell, conducted by counsel for Travis, at 5.) Doctor Nell further suspected that Plaintiff had experienced a spinal cord injury. (*Id.*) Plaintiff himself has testified that he might also have suffered a mild concussion in the accident. (Dep. of Todd Lovett at 17.) The available evidence supports Doctor Nell's assertion that the tests performed on Plaintiff were medically indispensable. (Dep. of Dr. Nell, conducted by counsel for Travis, at 5.)

that the procedure "involve[d] virtually no risk, trauma, or pain." *Id.* And finally, the test was performed by competent medical personnel in a medical setting.

Plaintiff's evidence suggests, at most, that Defendant Boddy requested the withdrawal of Plaintiff's blood, and that Defendant Travis complied with this request. The existing circumstances clearly justify Defendants' actions under *Schmerber* and, therefore, expose Defendants to no liability under the Fourth Amendment. Consequently, Defendants are therefore entitled to judgment as a matter of law with respect to the blood test performed on Plaintiff.

### B.

■ The forcible extraction of urine through a catheter arguably presents Fourth Amendment considerations of somewhat greater intensity. Unlike the withdrawal of blood, catheterization cannot be said to involve "virtually no risk, trauma, or pain." *Schmerber,* 384 U.S. at 771, 86 S.Ct. at 1836. Though a urine test, considered by itself, is a "highly effective means" for identifying the presence of alcohol, its effectiveness is much diminished if the police already possess a sample of the suspect's blood. Under such circumstances, there is little or no risk that proof of the presence of alcohol will vanish, and only slight additional benefit will be gained from adding a urine test to the information revealed by a blood analysis. When evaluated in this light, the Fourth Amendment's protection of "human dignity and privacy" might require a warrant at the very least before government officials could compel a citizen to undergo a catheterization. *Id.* at 770, 86 S.Ct. at 1835.

However, it is unnecessary for the Court to consider the Fourth Amendment implications of the procedure in these circum-stances. The absence of evidence tying Defendants Boddy or Travis to the catheterization procedure dooms Plaintiff's suit.

Plaintiff offers absolutely no proof that Defendant Travis inserted the catheter into him. Travis offers sworn testimony that another nurse performed that task. (Affid. of Pat Travis, Def. Travis's Resp. to Mot. for Summ.J.; *see also* Test. of Pat Travis, Def. Boddy's Mot. for Summ.J., App. at 20.) This evidence is consistent with the testimony of Plaintiff's brother, a witness to the emergency room events, who recalled that "[t]here was a couple of nurses in there, and one, I think, was drawing blood, and the other one was trying … to get the catheter in." (Dep. of Chris Lovett, at 8.) Plaintiff himself has admitted that he does not know the identity of the person who performed the catheterization. (Dep. of Todd Lovett, at 19.) [3] Documentary evidence ties Defendant Travis to the blood withdrawal only. (Pl.'s Mot. for Summ.J., Ex.s A & B.) [4] Plaintiff rebuts this collected testimony with the simple conclusory allegation, made in his various pleadings, that Travis conducted the catheterization. Section 1983 would impose liability upon Defendant Travis only if Plaintiff can establish that Travis "subject[ed], or cause[d him] to be subjected" to the deprivation of his rights. 42 U.S.C. § 1983. The absence of proof that Defendant Travis "caused" Plaintiff's catheterization leaves no genuine issue of material fact regarding her liability. Defendant Travis is clearly entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

Plaintiff's evidence regarding Defendant Boddy's role in the catheterization is equally weak. Doctor Nell has sworn that he ordered the insertion of the catheter into Plaintiff, that he did so because of medical necessity, and that his order was not influ-

---

3. That testimony reads: "Q. Do you know who catheterized you? A. No, Sir."

4. Plaintiff insists, without basis, that these documents link Defendant Travis to the catheterization. The first document is the "Blood Alcohol Specimen Collection Consent Form" described earlier in this Memorandum Opinion. As the document's name suggests, it refers solely to Travis's withdrawal of *blood* at Boddy's request. The second document, a nursing assessment form signed by Travis's supervisor, states in pertinent part: "Pt refuses BA [blood alcohol] for police. Pt placed under arrest. MCSD ordered blood alcohol. Area prepped [with] iodine [and] BA drawn per P. Travis." The assessment makes no reference to the catheterization.

enced by "any request or order of any law officer." (Dep. of Nell, conducted by counsel for Boddy, at 4.) The absence of documentary evidence linking Defendant Boddy to the catheterization becomes conspicuous when compared to the ample written evidence suggesting that Boddy did demand a blood test. Plaintiff has testified that Defendant Boddy asked *him* to donate urine. (Dep. of Todd Lovett at 8.) And Defendant Boddy indeed observed the catheterization and took possession of a portion of the urine extracted. (Test. of Boddy, Def. Boddy's Mot. for Summ. J., App. at 8–9.) But, when pressed to name the person who ordered the catheterization, Plaintiff has twice testified that he does not know that party's identity. (Dep. of Todd Lovett at 10–11.)[5] In his pleadings, Plaintiff inconsistently accuses Defendant Boddy at times, and Doctor Nell at other times, of having given the catheterization order.

Plaintiff's proof, in short, presents no genuine issue of material fact suggesting that Defendant Boddy caused him to be subjected to the catheter's insertion. Defendant Boddy is therefore entitled as a matter of law to judgment with respect to liability arising from Plaintiff's catheterization. Fed.R.Civ.P. 56(c).

### III.

■ Plaintiff's claim that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment merits only brief attention. Plaintiff offers absolutely no evidence that any party caused "unnecessary and wanton infliction of pain" due to "deliberate indifference" to Plaintiff's serious medical needs. *Wilson v. Seiter,* — U.S. —, —, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). Plaintiff cannot establish an Eighth Amendment violation in the absence of such evidence. To rule otherwise would establish a standard which would completely hamstring well-meaning hospital professionals.

■ Plaintiff lastly seeks to amend his Complaint by adding Doctor Nell and Marshall County Hospital as Defendants. Courts are instructed by the Sixth Circuit to grant leave to amend a complaint under Fed.R.Civ.P. 15(a) unless: (1) revision of the pleading would prejudice the opponent, or (2) the amended pleading could not withstand a motion to dismiss for failure to state a claim. *United States v. Wood,* 877 F.2d 453, 456 (6th Cir.1989). The second component of the test above proves fatal to both amendments sought by Plaintiff: he simply does not state a claim against either of the Defendants he seeks to add.

■ Years of litigation and the compilation of substantial evidence have yielded nothing to suggest that Doctor Nell ordered the catheterization of Plaintiff for any reason other than medical necessity. At least one Circuit Court has held that a surgical "intrusion" by a government doctor, conducted for medical reasons and not to elicit an investigative or administrative benefit for the government, is not a "search" as understood by the Fourth Amendment. *United States v. Attson,* 900 F.2d 1427, 1429 (9th Cir.1990); *United States v. Chukwubike,* 956 F.2d 209, 212 (9th Cir.1992). Even if the medical procedure performed on Plaintiff must be termed a "search," Plaintiff's evidence consistently suggests that he consented to the blood test and catheterization, provided those procedures were undertaken solely for medical reasons. (*See, e.g.:* "Consent to Admission, Examination, and Treatment" form, Def. Boddy's Compliance with Pretrial Order, Ex. 1; Dep. of Chris Lovett at 13; Dep. of Todd Lovett at 17.) A search based upon consent may be undertaken lawfully without a warrant or probable cause. *United States v. Richardson,* 949 F.2d 851, 858 (6th Cir.1991).

■ One final issue remains. Can Plaintiff state a claim against Marshall County

---

5. Plaintiff's testimony reads as follows: "Q. Do you know who ordered the cathe[te]rization? A. I am not sure.... Q. But you don't know who ordered it? A. No, sir, I am not sure." (Dep. of Todd Lovett at 10.) And again, a moment later: "Q. Did you hear anyone order the catheterization? A. No, sir, I didn't. Q. Is it fair to say that, despite what you may believe, you do not know who ordered the catheterization? A. No, I couldn't say who ordered it." (*Id.* at 11.)

Hospital or any of its other employees? The answer is "no." Since Plaintiff's blood and urine were lawfully obtained by the Hospital, the Hospital incurred no Fourth Amendment liability when it transferred to the police such fluids that remained after the Hospital's own tests were completed. *Jabara v. Webster*, 691 F.2d 272, 277 (6th Cir.1982). Nor could the Hospital in any respect be held liable for Section 1983 damages on the *respondeat superior* theory Plaintiff advances. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Therefore, amendment of Plaintiff's Complaint to add either Doctor Nell or the Hospital would be inappropriate, and are denied.

### IV.

Finally, let us allow common sense to intrude for a brief moment upon this extended Fourth and Eighth Amendment legal analysis. The proof in this case only briefly mentioned the fact that for any hospital to neglect taking blood and urine samples from a patient in Plaintiff's condition would be considered a gross breach of standard medical practice. Commonly, the hospital lab analysis would include an alcohol content examination.

Even if the medical procedures at issue here exceeded Plaintiff's consent, the "search" at issue was still reasonable. These were essential and ordinary medical tests for the circumstances. Indeed, the hospital's laboratory analysis of Plaintiff's urine described Plaintiff's catheterization as a "routine" procedure. (Def. Boddy's Compliance with pretrial Order, Ex. 1, p. 9.) It cannot be doubted that "the government's interests [not to mention those of Plaintiff and society] alleged to justify the intrusion"—the need to save Plaintiff's life and allow him to begin healing and the need to understand why a life threatening event occurred—outweighed intrusion on Plaintiff's privacy, at least to the extent that the procedures were conducted for medical reasons. *Lovvorn*, 846 F.2d at 1543. To hold otherwise would establish a standard that would harmfully and needlessly obstruct the essential medical efforts of well-meaning health care professionals and expose them to unfair legal liability.

The Court is entering an Order consistent with this Memorandum Opinion.

### ORDER

This matter is before the Court for consideration of the parties' Motions for summary judgment and Plaintiff's Motion to amend his Complaint. The Court having reviewed this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's Motion for summary judgment is DENIED; and

IT IS FURTHER ORDERED that Plaintiff's Motion to amend his Complaint is DENIED; and

IT IS FURTHER ORDERED that Defendant Travis's Motion for summary judgment is GRANTED; and

IT IS FURTHER ORDERED that Defendant Boddy's Motion for summary judgment shall be GRANTED.

IT IS FURTHER ORDERED that the Complaint is DISMISSED with prejudice as to all Defendants. This is a final and appealable Order and there is no just cause for delay.