**Larz A. ELLIOTT, Appellant–Respondent,**

v.

**RUSH MEMORIAL HOSPITAL, Carrie Tressler, R.N., Philip Kingma, M.D., Appellees–Petitioners.**

No. 70A01–0911–CV–553.

Court of Appeals of Indiana.

June 11, 2010.

---

Stephen Gerald Gray, Hall Render Killian Heath & Lyman, P.C., Indianapolis, IN, Attorney for Appellant.

Angela M. Smith, Indianapolis, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Larz Elliott appeals the dismissal of his proposed medical malpractice complaint against Rush Memorial Hospital, Carrie Tressler, and Dr. Philip Kingma (collectively "the Defendants"). We affirm.

### Issues

The restated issues before us are:

I. whether the claims of Elliott's proposed complaint fall within the scope of the Medical Malpractice Act ("the Act"); and

II. whether the Defendants are statutorily immune from any civil liability to Elliott as a matter of law.

### Facts

The facts as alleged in Elliott's proposed complaint are that on April 26, 2006, Rush County Sheriff's Deputy Terry Drake transported Elliott to Rush Memorial Hospital. Deputy Drake represented that he had a court order authorizing the taking of a blood sample from Elliott. After a blood sample was taken, Deputy Drake requested that a urine sample also be obtained, and represented that this likewise was authorized by court order. After Elliott was unable to produce a urine sample through natural urination, Dr. Kingma ordered Tressler, a nurse, to obtain urine from Elliott by catheterization. Elliott was secured to a hospital bed by handcuffs and had his pants forcibly removed. Tressler then inserted a fifteen-inch catheter through Elliott's penis and into his bladder and obtained the urine sample. Elliott

was not examined by any doctor before the catheterization occurred, no medical history of him was taken, the risks of the procedure were not discussed with him, and he was not given any follow-up instructions. There is no claim that the catheterization itself was done negligently.

On February 8, 2008, Elliott filed a proposed medical malpractice complaint with the State Department of Insurance against the Defendants. The proposed complaint alleged battery and negligence with respect to the forced catheterization. There is no indication in the record that Elliott has filed a separate ordinary civil complaint against the Defendants.[1] On February 6, 2009, the Defendants filed with the trial court a motion for preliminary determination of law and to dismiss Elliott's proposed complaint. On October 29, 2009, the trial court dismissed Elliott's proposed complaint.[2] It concluded that Elliott had not stated claims that required evaluation by a Medical Review Panel under the Act, and additionally that the Defendants were immune from any liability under Indiana Code Section 9–30–6–6. Elliott now appeals.

### Analysis

At the outset, we observe that this case is different from many that this court has addressed, wherein a plaintiff has filed an ordinary civil complaint against a health care provider and the health care provider has moved to dismiss the complaint, claiming the plaintiff must first file a proposed complaint with the Indiana Department of

Insurance in compliance with the Act. *See, e.g., Peters v. Cummins Mental Health, Inc.,* 790 N.E.2d 572 (Ind.Ct.App.2003), *trans. denied.* Presumably, plaintiffs generally want to avoid the Act's restrictions on ability to bring suit and its limitations on damages. Here, however, it is Elliott as a potential plaintiff, not the health care provider defendants, who is appealing the trial court's determination that his claims of battery and negligence fall outside the Act.

Ordinarily, a medical malpractice action in Indiana must be commenced by first filing a proposed complaint with the Department of Insurance and cannot proceed until the proposed complaint is reviewed by a Medical Review Panel. *See* Ind.Code § 34–18–8–4. However, a motion for preliminary determination of law, such as the Defendants filed here, is a procedure unique to claims under the Act that permits a trial court to decide threshold issues before the Medical Review Panel has acted on a proposed complaint. *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 694 (Ind.2000) (citing I.C. § 34–18–11–1).

Where, as here, no evidentiary material is submitted to the trial court in connection with a preliminary determination of law motion under the Act, we review the trial court's dismissal of a proposed complaint under the standard of review applicable to a trial court's disposition of a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Randolph v.*

1. Elliott is pursuing a separate lawsuit against Deputy Drake and the Rush County Sheriff's Department in federal court. *See Elliott v. Sheriff of Rush County,* 686 F.Supp.2d 840 (S.D.Ind.2010). This opinion contains more detailed factual development than we have yet in the case before us; we are limiting our discussion and analysis in this case solely to the facts as alleged in Elliott's proposed complaint. For this reason, we also have denied

the Defendants' motion to file a supplemental appendix containing evidence presented before the district court, but not before the trial court here.

2. Although the Defendants contend that the trial court dismissed Elliott's complaint with prejudice, the trial court's order does not state that the dismissal was with prejudice.

*Methodist Hosps., Inc.,* 793 N.E.2d 231, 234 (Ind.Ct.App.2003), *trans. denied, disagreed with on other grounds by Ellenwine v. Fairley,* 846 N.E.2d 657, 665 (Ind.2006). That standard is de novo. *Id.* We do not defer to the trial court's decision because dismissal based on failure to state a claim involves a pure question of law. *Id.* That is, a Rule 12(B)(6) determination does not require reference to extrinsic evidence, the drawing of inferences therefrom, or the weighing of credibility for its disposition. *Id.* "The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact." *Id.* If a proposed complaint states a set of facts that even if true would not support the relief requested, we will affirm the dismissal. *Id.*

## I. *Medical Malpractice Act*

We first consider whether the trial court properly concluded that Elliott's battery and negligence claims against the Defendants fall outside the purview of the Act. On appeal the Defendants make no argument refuting Elliott's argument that his battery and negligence claims do fall under the Act. An appellee's failure to respond to an issue raised in an appellant's brief is akin to failing to file a brief as to that issue. *Nance v. Miami Sand & Gravel, LLC,* 825 N.E.2d 826, 837 (Ind.Ct. App.2005), *trans. denied.* "Although this failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required, counsel for the appellee remains responsible for controverting arguments raised by the appellant." *Id.* For us to reverse, Elliott must establish only that the trial court committed prima facie error. *See id.* " 'Prima facie means at first sight, on first appearance, or on the face of it.' " *Id.* (quoting *Cox v. State,* 780 N.E.2d 1150, 1162 (Ind.Ct.App.2002)).

Even under this standard of review, we cannot say the trial court erred in concluding that Elliott's claims fall outside of the Act. "Malpractice" is defined by the Act as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 34–18–2–18. A "patient" is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." I.C. § 34–18–2–22. "Health care" is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." I.C. § 34–18–2–13.

We have held, pursuant to these definitions, that "a physician-patient relationship is necessary to bring claims under the procedures of the Act." *Peters,* 790 N.E.2d at 576 (citing *Weldon v. Universal Reagents, Inc.,* 714 N.E.2d 1104, 1110 (Ind.Ct. App.1999)). It may not be entirely accurate to say that the Act requires the existence of a physician-patient relationship, since institutions and persons other than physicians may be sued under the Act. Rather, it is more correct to say we have held that the Act requires that a person's medical treatment was sought out or was necessary for the person's own benefit.

In *Weldon,* a woman responded to an ad from a blood bank for persons to donate plasma, which first required her to be immunized with certain antigens. After the woman developed a large hematoma at the site of these injections and contended that she was unaware the antigens would

permanently change her blood, she filed a counterclaim against the blood bank in a suit originated by the blood bank.[3] The trial court concluded that the woman's claims fell under the Act, but we disagreed. We noted that there was no evidence the woman suffered from any medical condition or that she went to the blood bank in search of medical treatment or care. *Weldon,* 714 N.E.2d at 1109–10. We also noted that the antigen injection process was not intended to benefit the woman, but was solely for the benefit of persons who would receive the plasma donations. *Id.* at 1110. We concluded the woman was not a "patient" of the blood bank for purposes of the Act. *Id.*

▮▮▮▮ Here, likewise, Elliott's catheterization clearly was not for his own medical benefit. It was not related to any treatment he needed for any disease or injury, but was carried out solely for law enforcement purposes. Moreover, we believe Elliott's situation presents an even stronger case for falling outside the Act than *Weldon.* Unlike the woman in *Weldon,* Elliott did not voluntarily submit to the medical procedure that is the basis of his claims against the Defendants. We reiterate that a "patient" is someone who has received or should have received health care "under a contract, express or implied ...." I.C. § 34–18–2–22. This wording implies either that the "patient" has voluntarily submitted to the provision of medical services, or has benefitted from

such services. An express contract, after all, requires offer, acceptance, consideration, and at least two consenting parties reaching a meeting of the minds. *See Conwell v. Gray Loon Outdoor Mktg. Group, Inc.,* 906 N.E.2d 805, 812–13 (Ind. 2009). An implied or quasi-contract, on the other hand, requires the provision of a benefit to a party at the party's implied request, and a showing that equity demands payment to the party providing the benefit in order to prevent unjust enrichment. *See Wenning v. Calhoun,* 827 N.E.2d 627, 630 (Ind.Ct.App.2005), *trans. denied.* The facts alleged are that Elliott did not consent to the catheterization, nor did he benefit from it or impliedly request that it be done. We must conclude Elliott was not a "patient" of the Defendants for purposes of the Act.[4] The trial court, therefore, did not err in dismissing Elliott's proposed complaint filed with the Department of Insurance.

## II. Statutory Immunity

▮▮▮▮ We now choose to address the trial court's ruling that the Defendants enjoy complete statutory immunity from *any* potential civil liability related to Elliott's catheterization.[5] The Defendants rely upon the following statute, which states in full:

(a) A physician or a person trained in obtaining bodily substance samples and

---

3. The blood bank had claimed breach of contract by the woman in her attempts to withdraw from the donor program and enroll in a different donor program with a different blood bank.

4. Although this was not one of the trial court's stated reasons for dismissing Elliott's proposed complaint, we may affirm the granting of a motion to dismiss if it is sustainable on any theory. *See McPeek v. McCardle,* 888 N.E.2d 171, 174 (Ind.2008).

5. The Defendants' sole argument on appeal is related to this issue. Although we affirm the dismissal of Elliott's proposed medical malpractice complaint, we address the Defendants' argument related to the statutory immunity issue because the trial court's ruling that the Defendants enjoyed such immunity would automatically bar any further action by Elliott against the Defendants, and judicial economy mandates we explore this question.

acting under the direction of or under a protocol prepared by a physician, who:

(1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or

(2) performs a chemical test on blood, urine, or other bodily substance obtained from a person;

shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as a part of a criminal investigation. Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

(b) A physician, a hospital, or an agent of a physician or hospital is not civilly or criminally liable for any of the following:

(1) Disclosing test results in accordance with this section.

(2) Delivering a blood, urine, or other bodily substance sample in accordance with this section.

(3) Obtaining a blood, urine, or other bodily substance sample in accordance with this section.

(4) Disclosing to the prosecuting attorney or the deputy prosecuting attorney for use at or testifying at the criminal trial of the person as to facts observed or opinions formed.

(5) Failing to treat a person from whom a blood, urine, or other bodily substance sample is obtained at the request of a law enforcement officer if the person declines treatment.

(6) Injury to a person arising from the performance of duties in good faith under this section.

(c) For the purposes of this chapter, IC 9–30–5, or IC 9–30–9:

(1) the privileges arising from a patient-physician relationship do not apply to the samples, test results, or testimony described in this section; and

(2) samples, test results, and testimony may be admitted in a proceeding in accordance with the applicable rules of evidence.

(d) The exceptions to the patient-physician relationship specified in subsection (c) do not affect those relationships in a proceeding not covered by this chapter, IC 9–30–5, or IC 9–30–9.

(e) The test results and samples obtained by a law enforcement officer under subsection (a) may be disclosed only to a prosecuting attorney or a deputy prosecuting attorney for use as evidence in a criminal proceeding under this chapter, IC 9–30–5, or IC 9–30–9.

(f) This section does not require a physician or a person under the direction of a physician to perform a chemical test.

(g) A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician shall obtain a blood, urine, or other bodily substance sample if the following exist:

(1) A law enforcement officer requests that the sample be obtained.

(2) The law enforcement officer has certified in writing the following:

(A) That the officer has probable cause to believe the person from whom the sample is to be obtained has violated IC 9–30–5.

(B) That the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another.

(C) That the accident that caused the serious bodily injury or death of

another occurred not more than three (3) hours before the time the sample is requested.

(3) Not more than the use of reasonable force is necessary to obtain the sample.

(h) If the person:

(1) from whom the bodily substance sample is to be obtained under this section does not consent; and

(2) resists the taking of a sample;

the law enforcement officer may use reasonable force to assist an individual, who must be authorized under this section to obtain a sample, in the taking of the sample.

(i) The person authorized under this section to obtain a bodily substance sample shall take the sample in a medically accepted manner.

(j) A law enforcement officer may transport the person to a place where the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:

(1) A physician holding an unlimited license to practice medicine or osteopathy.

(2) A registered nurse.

(3) A licensed practical nurse.

(4) An emergency medical technician-basic advanced (as defined in IC 16–18–2–112.5).

(5) An emergency medical technician-intermediate (as defined in IC 16–18–2–112.7).

(6) A paramedic (as defined in IC 16–18–2–266).

(7) A certified phlebotomist.

I.C. § 9–30–6–6 (2009).[6] The plain language of this statute indicates that the immunity it confers under subsection (b) would apply in any civil case—whether it is a medical malpractice claim or an ordinary civil suit. The Defendants assert that because Dr. Kingma allegedly ordered Tressler to catheterize Elliott to obtain the urine sample that Deputy Drake had requested, they are immune from any civil liability because Tressler "[o]btain[ed] a blood, urine, or other bodily substance sample in accordance with this section." I.C. § 9–30–6–6(b)(3).

■ Elliott contends that this statutory immunity does not apply because the urine sample was not obtained "in accordance with this section." *Id.* He notes that subsection (g) of the statute places certain requirements that must be met before a physician or health care worker obtains a bodily substance sample at a law enforcement officer's request. He argues that subsection (g)(2) was not complied with because there is no indication Deputy Drake certified in writing that he had probable cause to believe Elliott was operating a vehicle while intoxicated, and also did not certify that Elliott was involved in a vehicular accident resulting in death or serious bodily injury in the three hours before the sample was requested. Elliott also contends that subsection (g)(3) was not complied with because he alleges that the urine sample was obtained through the use of unreasonable force. Finally, Elliott also argues that forced catheterization is not a "medically accepted manner" of obtaining a bodily substance sample, as required by subsection (i) of the statute.

There is no reported decision in Indiana as to whether subsections (g) and (i) of Section 9–30–6–6 places limitations on

---

**6.** The General Assembly recently passed and the Governor signed a bill amending subsection (j) of this statute. *See* P.L. 36–2010. This amendment is irrelevant to the issues here.

when health care workers can claim immunity for obtaining a bodily substance sample at a law enforcement officer's request. We have, however, addressed a similar issue in the context of the statute providing immunity to retailers for detaining persons suspected of shoplifting. Indiana's Shoplifting Detention Act immunizes merchants from torts such as false imprisonment, false arrest, and malicious prosecution in connection with detaining someone whom the merchant has probable cause to believe has committed shoplifting. *See Wal–Mart Stores, Inc. v. Bathe,* 715 N.E.2d 954, 957 (Ind.Ct.App.1999) (citing I.C. § 35–33–6–2), *trans. denied.* The statute also requires, however, that any such detention "be reasonable and last only for a reasonable time...." I.C. § 35–33–6–2(b)(1). We held that this express qualification on the statute's grant of immunity meant that merchants could be liable in negligence for an unreasonable detention. *Wal–Mart Stores,* 715 N.E.2d at 959–60.

 Similarly, Section 9–30–6–6(b)(3)'s grant of immunity to health care providers obtaining bodily substance samples at law enforcement request is expressly limited to samples obtained "in accordance with this section...." We conclude the statute's grant of immunity does not apply to samples *not* obtained in accordance with all of the statute's provisions. The Defendants essentially are requesting that this court judicially create a broad grant of immunity to any health care provider any time they take a bodily substance sample from an individual at law enforcement request, whether or not the sample was taken in compliance with Section 9–30–6–6; they base their arguments on the law surrounding the "good faith" exception to the exclusionary rule, developed in the context of suppression of evidence obtained in violation of the Fourth Amendment to the United States Constitution. *See, e.g., Herring v. United States,* — U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). We do not believe, however, that we ought to create broad immunity for certain types of defendants in a certain class of cases, where our legislature has already clearly spoken on the precise issue and provided for a more limited immunity. If the legislature wishes to create broader immunity, it may do so.[7]

 Here, we cannot say the Defendants are entitled to statutory immunity against Elliott's claims as a matter of law. We note that generally, a party asserting a claim of statutory immunity bears the burden of proving that it is entitled to such immunity. *See, e.g. Madden v. Indiana Dep't of Transp.,* 832 N.E.2d 1122, 1126 (Ind.Ct.App.2005) (addressing immunity claims under the Indiana Tort Claims Act). The Defendants have not filed any pleadings or submitted any evidence that they obtained the necessary written certification from Deputy Drake under Section 9–30–6–6(g)(2) before forcibly catheterizing Elliott.

Moreover, although the Defendants argue otherwise, we believe Elliott's proposed complaint presents legitimate questions of fact regarding whether a forced catheterization is a "medically accepted manner" for obtaining a urine sample, and

---

7. We have previously observed that Section 9–30–6–6(g) applies only "in very limited circumstances...." *Abney v. State,* 811 N.E.2d 415, 422 n. 8 (Ind.Ct.App.2004), *opinion adopted by Abney v. State,* 821 N.E.2d 375, 378 (Ind.2005). Specifically, it cannot be used as a means to gather evidence if there is probable cause a driver is intoxicated but the driver was not involved in an accident resulting in serious bodily injury or death. *Id.* It also does not apply if a driver is involved in such an accident, but there is no probable cause the driver is intoxicated. *Id.*

whether the catheterization here constituted unreasonable force. Courts have noted that unlike the drawing of blood, "catheterization cannot be said to involve 'virtually no risk, trauma, or pain.'" *Lovett v. Boddy,* 810 F.Supp. 844, 848 (W.D.Ky. 1993) (quoting *Schmerber v. California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966)). *See also Jiosi v. Township of Nutley,* 332 N.J.Super. 169, 753 A.2d 132, 136–37 (N.J.Super.A.D.2000) (holding that under New Jersey statute that provides immunity to health care providers from liability for obtaining body substance specimens at law enforcement request, so long as specimen was obtained in a "medically accepted manner," there was a question of fact as to whether forced catheterization was a "medically accepted manner" of obtaining urine sample under the circumstances of the case). Most recently, the United States District Court for the Southern District of Indiana has held in Elliott's case against Deputy Drake and the Rush County Sheriff's Department that unlike a blood draw, a forced catheterization, particularly where a blood sample already has been obtained, may constitute an unreasonable search and seizure under the Fourth Amendment. *See Elliott,* 686 F.Supp.2d at 862.[8]

The position that the trial court and the Defendants offer is that once a police officer requests a health care provider to obtain a bodily substance sample from someone, the health care provider has no choice but to comply, regardless of the circumstances. Particularly at this point in the litigation, we will not endorse such a broad sweep of immunity. We conclude that given all the circumstances of this case (as now alleged)—Deputy Drake's compliance or non-compliance with the statutory procedures for requesting bodily substance samples, the fact that a blood sample already was taken, the precise circumstances surrounding Elliott's inability or unwillingness to produce a urine sample through natural urination, and the discomfort and risks associated with catheterization—Elliott's proposed complaint adequately presented issues as to whether a reasonable health care provider would have ordered and/or performed a forced catheterization.

In sum, we hold that Elliott's proposed complaint adequately stated factual issues regarding whether Elliott's urine sample was obtained pursuant to a written request meeting the dictates of subsection (g)(2), whether the taking of the sample constituted unreasonable force in contravention of subsection (g)(3), and whether forced catheterization constituted a "medically accepted manner" for obtaining a urine sample under subsection (i). The Defendants have not established that they are entitled to immunity as a matter of law under Section 9–30–6–6 against any civil claims Elliott might bring.

### Conclusion

The trial court erred in concluding that the Defendants enjoy complete statutory immunity from any civil liability related to Elliott's claims of battery and negligence. However, Elliott's claims fall outside the parameters of the Act because he was not a "patient" of the Defendants. On that

---

8. The trial court here relied in part upon *Sparks v. Stutler,* 71 F.3d 259 (7th Cir.1995), *cert. denied,* for the proposition that it is medically acceptable to obtain a urine sample from an individual through forced catheterization. The district court in *Elliott* found *Sparks* distinguishable from the present case, because *Sparks* concerned a prison inmate and not merely someone suspected of a crime. *Elliott,* 686 F.Supp.2d at 863. We agree with the district court's distinction. At the very least, we do not believe the record in this case is sufficiently developed so that we can say as a matter of law that it was medically acceptable to forcibly catheterize Elliott.

basis, we affirm the trial court's dismissal of Elliott's proposed complaint.

Affirmed.

BAILEY, J., and MAY, J., concur.