## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Thomas K. Hoffman
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Francis A. Veltri
Merrillville, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Douglas K. Hoffman, as successor trustee of the Hoffman HF Land Trust, and TDM Farms, Inc., <br><br> *Appellant-Plaintiffs,* <br><br> v. <br><br> Andrew G. James and Susan G. James, <br><br> *Appellees-Defendants.* | December 29, 2016 <br><br> Court of Appeals Case No. 45A03-1604-CC-743 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Calvin D. Hawkins, Judge <br><br> Trial Court Cause No. 45D02-1311-CC-754 |

**Mathias, Judge.**

[1]     Douglas K. Hoffman ("Hoffman"), as the successor trustee to the Hoffman HF Land Trust ("the Trust"), and TMD Farms, Inc. ("TDM") (collectively "the

Plaintiffs"), filed a complaint for damages and injunctive relief in Lake Superior Court alleging that Andrew G. James and Susan G. James ("the Jameses") obstructed or interfered with the above-ground water course and severed the underground tile system, which drained the Plaintiffs' farm. The trial court granted the Jameses' motion for summary judgment. The Plaintiffs appeal and present two issues for our review, which we restate as: (1) whether the Jameses properly designated evidence in favor of their motion for summary judgment, and (2) whether the trial court properly granted summary judgment in favor of the Jameses. Finding the first issue dispositive, we reverse and remand for further proceedings.

## Facts and Procedural History

[2] Hoffman is the successor trustee of the Trust. The Trust owns certain real property in Lake County that is used for farming. Hoffman is also a principal of TDM Farms, Inc., which leases the Trust's real estate. The Jameses own real property in Lake County that is located adjacent to Trust's property on its south end. Both of the properties are drained by an above-ground water course and an underground tile drainage system.

[3] In 2010, the Jameses excavated a portion of their property and created a pond on the property. This resulted in an alteration to the drainage of Hoffman's land and subsequent flooding of the crops. Hoffman claimed that this caused

damage to his land and crops, and at some point in 2010,[1] the parties entered into settlement negotiations, which resulted in Hoffman signing a General Release,[2] which generally provides that, in exchange for $60,000, he and TDM Farms would release the Jameses

> from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted, or may in the future develop, from an incident/accident which occurred on or about JUNE 1, 2010, at or near CLARK STREET, in the County of LAKE, City of Crown Point, State of Indiana, including, but not limited to, all claims which were or could have been result [sic] of the above described incident/accident.

Appellant's App. p. 33.

[4] Three years later, on October 20, 2013, the Plaintiffs filed an action against the Jameses, again claiming damages to their farmland and crops. The complaint alleged in relevant part:

> 4.   There exists and has existed on the lands of the Plaintiffs and Defendants a natural aboveground water course, together with an underground drain tile system, that drains the lands of both

---

[1] On appeal, Hoffman notes that the release itself is undated. However, at the summary judgment hearing, Hoffman's counsel admitted that the release was from 2010.

[2] As explained below, we conclude that, because it was unverified, the General Release should not have been considered by the trial court in ruling on the Jameses' motion for summary judgment. Still, it is a part of the record before us, and we quote from it to better explain the parties' arguments.

Plaintiffs and Defendants, running generally in a north to south/southwesterly direction.

5. Water naturally flows aboveground over and underground through the drain tile system from and through the land of Plaintiffs to, over and through the land of Defendants when the aboveground water course and underground drain tile system are not obstructed.

6. During the course of and since the time of the construction of a pond by Defendants upon Defendants' land, Defendants obstructed and continue to obstruct the aboveground water course and severed the underground drain tile system which drained the land of Plaintiffs.

7. By obstructing the aboveground water course and by severing the underground drain tile, Defendants have interfered and continue to interfere with the natural drainage of water from the land of Plaintiffs.

8. As a direct and proximate result of Defendants' actions, water has remained on the lands of Plaintiffs from time to time, flooding Plaintiffs' land and causing damage to Plaintiff's crops.

9. A portion of Plaintiffs' real estate fails to have normal drainage as the same existed prior to the obstruction of the aboveground water course and the severance of the underground drain tile by Defendants.

10. As a direct proximate result of the obstruction of the aboveground water course and the severance of the underground drain tile by Defendants, and the resulting failure of Plaintiffs' lands to drain normally, Plaintiffs' lands and the crops grown thereon have been adversely affected.

11. The crop yield for corn and soybeans grown by Plaintiff, TDM Farms, on the above-described real estate have been less for the 2011, 2012 and 2013 crop years than the yields would have been had there been no obstruction of the aboveground water course and/or severance of the underground drain tile by Defendants

12. The conduct of Defendants in obstructing the aboveground water course and severing the underground drain tile is contrary to Indiana law.

13. Defendants' actions constitute unreasonable use of property by Defendants causing injury to Plaintiffs and remain a continuing nuisance.

14. Despite due demand by Plaintiffs upon Defendants for the removal of the obstruction to the aboveground water course and for repair of the underground drain tile causing damage to Plaintiffs, Defendants have wholly failed and refused to take remedial action in a timely manner and to the extent necessary to eliminate or mitigate ongoing damages to Plaintiffs.

15. The obstruction of the aboveground water course and severance of the underground drain tile by Defendants have caused and will continue to cause damages to Plaintiffs until such time as the obstructions to the aboveground water course are removed and repairs are made to the underground drain tile system.

16. Defendants actions in causing and inaction in removing the aboveground water course obstructions and in severing and failing to repair the underground drain tile system were and are willful and wanton, intentional, and without justification and are done with a reckless disregard for the consequences.

WHEREFORE, Plaintiffs, and each of them, pray for judgment against Defendants, individual and jointly, in the following respects:

1. For compensatory damages for the loss to Plaintiffs' reduced yield for 2011, 2012 and 2013 crop yields;

2. For punitive damages for Defendants' conduct which was willful, wanton, intentional or done with a reckless disregard for the consequences;

3. For the costs to remove the obstructions of the aboveground water course and to repair the underground drain tile system;

4. For a permanent injunction, enjoining Defendants from causing or creating further obstruction of the aboveground water course or causing any further damage to or interference with the underground drain tile system to the detriment of Plaintiffs;

5. For the costs of this action; and

6. For all other just and proper relief in the premises.

Appellant's App. pp. 10-13.

[5] The Jameses filed an answer to the complaint on December 20, 2013, in which they denied the Plaintiffs' claims. In addition, the Jameses asserted several affirmative defenses, including release, accord and satisfaction, and payment. Appellant's App. p. 17.

[6] On January 22, 2016, the Jameses filed a motion for summary judgment, a memorandum in support thereof, and a designation of evidence in support of the motion, which delineated four items of evidence: (1) the April 15, 2011 letter Hoffman sent to the Jameses, (2) the General Release, (3) the Plaintiffs' complaint, and (4) a letter sent by the Plaintiffs' counsel to the Jameses' insurer. The Plaintiffs filed a response to the motion for summary judgment, including designated evidence in support thereof, on February 29, 2016. The trial court held a hearing on the summary judgment motion on March 9, 2016, and granted the Jameses' motion for summary judgment that same day. The Plaintiffs now appeal.

## Summary Judgment

[7] The standard of review we apply on review of a trial court's order granting or denying summary judgment is well settled: we review summary judgment *de novo*, applying the same standard as the trial court. *Rapkin Grp., Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 756 (Ind. Ct. App. 2015), *trans. denied* (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). Drawing all reasonable inferences in favor of the nonmoving parties, summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id*. at 756-57. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id*. at 756. The initial burden is on the movant to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the nonmovant to come forward with contrary evidence showing an issue for the trier of fact. *Id*. Although the nonmoving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court. *Id*.

## Discussion and Decision

[8] The Plaintiffs argue that the Jameses failed to properly designate the evidence they relied on in their motion for summary judgment. We first note that the

Jameses fail to respond to this argument on appeal and instead argue only that the trial court properly granted summary judgment in their favor.

[9]   An appellee's failure to respond to an issue raised in an appellant's brief is akin to failing to file a brief as to that issue. *Elliott v. Rush Mem'l Hosp.*, 928 N.E.2d 634, 639 (Ind. Ct. App. 2010), *trans. denied*. Although the appellee's failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required, it is still the appellee's responsibility to controvert arguments raised by the appellant. *Id*. When an appellee fails to respond to an issue raised in the appellant's brief, the appellant need only establish prima faci*e* error in the trial court's ruling. *Id*. In this context, prima facie means "'at first sight, on first appearance, or on the face of it.'" *Id*. (quoting *Nance v. Miami Sand & Gravel, LLC*, 825 N.E.2d 826, 837 (Ind. Ct. App. 2005), *trans. denied*). With this more less strict standard in mind, we address the Plaintiffs' claims.

[10]  The Jameses filed a motion for summary judgment, a memorandum in support of the motion, and a separate designation of evidence, the latter of which provides:

> Defendants, Andrew G. James and Susan G. James, by counsel, pursuant to Trial Rule 56 of the Indiana Rules of Trial Procedure, in support of their Motion for Summary Judgment, designate the following evidence:
>
> 1.   Letter dated April 15, 2011, Exhibit A
> 2.   General Release, Exhibit B

3. Complaint, Exhibit C

4. Letter dated May 26, 2011, Exhibit D

Appellant's App. p. 29. The referenced documents were attached to the designation. The Plaintiffs argue that the trial court should not have considered this evidence designated by the Jameses because the designated materials were not verified.

[11] As noted above, Exhibit A consists of a letter from Hoffman, Exhibit B is the General Release, Exhibit C is the Plaintiffs' complaint, and Exhibit D is a letter sent by Plaintiffs to the Jameses' insurer.

[12] The Plaintiffs correctly note that Indiana courts have long held that unsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence and should not be considered when ruling on a motion for summary judgment. *Ford v. Jawaid*, 52 N.E.3d 874, 877 (Ind. Ct. App. 2016) (citing *Stafford v. Szymanowski*, 31 N.E.3d 959, 964 (Ind. 2015); *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 159 (Ind. 2014); *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000)); *see also Wallace v. Indiana Ins. Co.*, 428 N.E.2d 1361, 1365 (Ind. Ct. App. 1981) ("An unsworn statement or unverified exhibit does not qualify as proper evidence."); *Pomerenke v. Nat'l Life & Acc. Ins. Co.*, 143 Ind. App. 472, 474, 241 N.E.2d 390, 392 (1968) ("[W]e agree with appellant that it was not proper to consider the unverified exhibit filed with the motion [for summary judgment] in this case.").

[13]     Despite this clear requirement, practitioners often secure the admission of unverified exhibits for summary judgment, such as correspondence, by the agreement of opposing counsel. This is a courtesy, so that counsel need not prepare the routine, verification affidavit(s) for, or call or depose witnesses to verify, such common pieces of evidence shared by, and often originated between, the parties. However, in this instance, counsel for the plaintiffs repeatedly objected to the admission of the unverified exhibits at the hearing on the motion for summary judgment and carried the objections forward in this appeal.

[14]     Nothing in the record indicates that Exhibits A, B, and D, which were designated by the Jameses and attached to their motion for summary judgment, were verified. Instead, it appears as if the Jameses simply attached unverified copies of these items to their designation of evidence without the agreement of Plaintiffs' counsel. This was improper but is likely to be quickly remedied in the trial court below.

[15]     We are therefore constrained to conclude that the Plaintiffs have established prima facie error on the part of the trial court for considering these unverified materials on summary judgment. The only remaining evidence that the Jameses designated is the Plaintiffs' complaint, which in no way supports the Jameses' motion for summary judgment. Thus, the Jameses failed to support their motion for summary judgment with any properly designated evidence that would demonstrate that they were entitled to judgment as a matter of law.

Accordingly, the trial court erred in granting summary judgment in favor of the Jameses.

## Conclusion

[16] Because the Jameses failed to properly designate the evidence in support of their motion for summary judgment, we reverse the trial court's grant of summary judgment in favor of the Jameses and remand for further proceedings consistent with this opinion.

[17] Reversed and remanded.

Robb, J., and Brown, J., concur.